DANIEL C. DURAND, III
Attorney for Debtor
State Bar Card No. 06287570
DURAND & ASSOCIATES, P.C.
522 Edmonds, Suite 101
Lewisville, Texas 75067
(972) 221-5655
FAX No. (972) 221-9569
durand@durandlaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 25-40909 |
| | § | |
| NATUROMULCH, LLC, | § | |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

## DEBTORS' PLAN OF REORGANIZATION
## DATED JUNE 30, 2025

Naturomulch, LLC, the Debtor, (herein "Naturomulch"), submits the following Plan:

# I
# INTRODUCTION

### Identity of the Debtor

Naturomulch, LLC, a Texas limited liability company (hereinafter "Debtor") filed its voluntary Chapter 11 Case as a Subchapter V Small Business Debtor, in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on March 31, 2025. The business provides wood chip mulch for school playgrounds and parks. Debtor's main assets consist of real estate. It has been in existence since 2013. Omprakash Goyal is the owner of this business. He has over 12 years in the business. Revenues were:

$801,584.00 in 2021
$950,230.00 in 2022
$998,752.00 in 2023
$697,105.00 in 2024

Debtor proposes to pay 100% of its current indebtedness by ongoing operations over the next one hundred and twenty (120) months. See Debtor's Statement of Operations attached as Exhibit "A".

### Purpose of Plan Statement; Source of Information

Debtor submits this Plan ("Plan") to all known Claimants of Debtor for the purpose of disclosing that information which the Debtor has determined is material, important, and necessary for Creditors of Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Reorganization dated June 30, 2025 ("Plan"). This Plan describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor.

### Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a Debtor is authorized to reorganize its business for its own benefit and that of the creditors and equity interest holders. Formulation of a Plan is the principal purpose of a Chapter 11 reorganization case. A Plan sets forth the means for satisfying claims against and interests in the Debtor. After a Plan has been filed, it must be accepted by holders of claims against, or interests in, the Debtor.

### Explanation of the Process of Confirmation

Even if all Classes of Claims accept the Plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a Plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the Debtor were liquidated under Chapter 7 of the Code.

Acceptance of the Plan by the Creditors and Equity Interest Holders is important. In order for the Plan to be accepted by each class of claims, the creditors that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the Plan in such class must vote for the Plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the Plan in such class must vote for the Plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the Debtor vote in favor of the Plan in order for it to be confirmed by the Court. The Plan, however, must be accepted by: (i) at least the holder of (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a Plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Confirmation of the Plan discharges the Debtor from all their pre-confirmation debts and liabilities except as expressly provided for in the Plan and Section 1141(d) of the Code. Confirmation makes the Plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the Plan.

## Voting Procedures

Unimpaired Class.  Claimants in Class 1, 2, 3, 5, 6 and 9 are not impaired under the Plan. Such Class is deemed to have accepted the Plan.

Impaired Classes.  The Class 4, 7 and 8 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Class 4, 7 and 8.

Each holder of an Allowed Claim in Class 4. 7 and 8 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

Except to the extent permitted by the Bankruptcy Court pursuant to Rule 3018 of the Bankruptcy Rules, ballots that are received after the Voting Deadline will not be accepted or used by the Debtor in connection with the Debtor's request for confirmation of the Plan.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt) acceptance and revocation or withdrawal of ballots or master ballots will be determined by the Debtor in their sole discretion, whose determination will be final and binding.

For all Classes, the ballot must be returned to Daniel C. Durand III, Durand & Associates, P.C., 522 Edmonds Lane, Suite 101, Lewisville, Texas 75067.  In order to be counted, ballots must be RECEIVED no later than at the time and date listed on the ballot.

## Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive much less than the Plan provides.  Accordingly, since the Plan proposes a 100% dividend to all creditors, such creditors

are receiving more than they would receive in a Chapter 7 liquidation.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

### Cramdown

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a Plan over the objection of one or more classes of claims or interests are set for in Section 1129(b) of the Code.

## II
## REPRESENTATIONS

The information contained in this Plan has been derived from the Debtor, unless specifically stated to be from other sources.

All initially capitalized and bolded words used in this Plan have the same definitions provided for in Article XII of the Plan.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN.  THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN.  ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEY FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC").    THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IS ANY STATE OF THE UNITED STATES.    IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT

OF THIS PLAN  DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

### III
### HISTORY AND DESCRIPTION OF BUSINESS

The owner of the business, Omprakash Goyal, has 12 year's experience in this industry and has been in this particular business since 2013.  Due to a downturn in the economy, Covid and loss of contracts with Dallas and Fort Worth, Debtor's business suffered in 2024, but is improving. See attached Exhibits "B" (Balance sheet), "C" (Profit and Loss Statement). Gross revenues have been $801,584.00 in 2021, $950,230.00 in 2022, $998,752.00 in 2023 and $697.105.00 in 2024. The decreases in 2024 were due to Covid and the loss of major contracts with the City of Dallas and City of Fort Worth.  Those contracts have now been regained for 2025.

The management has made several changes to improve profitability:

1. It has regained and been awarded the City of Dallas and City of Fort Worth contracts for the next 3 years; and

2. It is aggressively pursuing more business from smaller customers, like daycares, Montessori schools, ISD's, churches, apartment complexes, HOA's and individuals.

A liquidation analysis reveals that if Naturomulch fails, the real estate, cash, receivables, intangibles, and miscellaneous office equipment may be worth approximately $1,522,254.00 in a Chapter 7, but there would be only $319,054.00 or a 21.34% dividend left for unsecured creditors after priority, secured, and administrative claims.  In this proposed Chapter 11, $415,582.00 at 6% for one hundred twenty (120) months equaling $553,665.52 or 100% will be repaid to unsecured creditors.  We believe the creditors are better off in this Chapter 11 than if it were a 7. Under the proposed plan, 100% of all administrative, secured and priority claims will be repaid and Debtor's continued operations will repay unsecured creditors 100%.  A Chapter 7 Trustee would charge an administrative fee of at least 10% and sell as quickly as possible without maximizing a return to

all creditors. The debtor in possession proposes to pay its small administrative claims and 100% of its unsecured claims. This is a much better deal for all creditors. See the Liquidation Analysis attached as Exhibit "D", Distribution to Unsecured Creditors in 7 as Exhibit "D-1" and compare Distribution to Unsecured Creditors in this 11 as Exhibit "E".

Naturomulch asks for your vote in favor of this plan of reorganization and hopes to confirm it soon at a Confirmation Hearing in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division, Plano Bankruptcy Courtroom, 660 N. Central Expressway, Third Floor, Plano, Texas 75074.

## IV
## FINANCIAL INFORMATION

The principal obligor of these debts is Naturomulch.

The principal tangible assets of Naturomulch are as follows:

| | |
|---|---|
| Real estate: | $1,140,492.00 |
| Cash on Hand as of March 31, 2025: | $   14,687.00 |
| Equipment: | $  367,075.00 |
| Inventory on hand valued at liquidation as of March 31, 2024 | $      0.00 |
| Account receivables as of March 31, 2025 approximately of which 100% is collectable | $      0.00 |
| Miscellaneous customer lists, domain name and website and office equipment and furniture are valued at | $      0.00 |
| TOTAL: | $1,522,254.00 |

The principal liabilities are as follows:

Administrative priority claims of Debtor's attorney fees ($15,000). (Class 1)
Priority claims of $1,244.00. (Class 2)
Secured claims to creditor in the amount of $943,493.00 (Class 3, 4, 5, and 7)
Allowed unsecured debt to five (5) creditors of $415,583.00 (Class 8)
TOTAL:                                                                        $1,375,318.00

## V
## PENDING CLAIMS AND LITIGATION

There are no pending lawsuits at this time. However, if Naturomulch converts to Chapter 7, it anticipates a suit for damages for breach of contract from the City of Dallas for $785,196.00 and the City of Fort Worth for $292,500.00 for a total liability of $1,077,696.00. This will significantly dilute the payments to the existing 5 creditors.

## VI
## PRESENT PROJECTIONS AND INCOME HISTORY

The attached Balance Sheet as of March 31,2025, shows the assets and liabilities of the Debtor. See attached Exhibit "B". A Profit and Loss Statement is attached. See Exhibit "C". Payments from net proceeds in the amount of of $12,897.33 per month for for one hundred twenty (120) months will yield a base of $1,547,679.52 to be paid to:

Class 1 administrative claims ($15,000.00);
Class 2 priority claims ($1,244.00);
Class 8 unsecured creditors ($553,665.52); and
Class 3, 4, 5, 6 and 7 ($979,014.00).

Gross income history recently for the last 4 years has been $801,584 in 2021, $950,230 in 2022, $998,752 in 2023 and $697,105 in 2024. With the exception of 2024, the business has shown steady income growth since its inception in 2013.

Income projections for the next 120 months is shown on the attached Exhibit "F". Based on these income and expense projections, the required plan payments of $12,897.33 per month is clearly feasible.

## VII
## LIQUIDATION ANALYSIS

Should Naturomulch file under Chapter 7 of the Bankruptcy Code on the date of this Disclosure Statement, it is estimated that the below listed assets would be realized by the Trustee in the following amounts:

| | |
|---|---|
| Real Estate | $1,140,492.00 |
| Cash | $    14,687.00 |
| Equipment | $  367,075.00 |
| Accounts Receivable | $        0.00 |
| Inventory | $        0.00 |
| Other Assets (miscellaneous customer lists, domain name and website) | $        0.00 |
| **Total** | **$1,522,254.00** |

The expenses of administration in such a Chapter 7 case are estimated to be approximately $243,238.00 ($152,000.00 plus $68,429.00 realtor and closing costs estimated to be $22,809.00), which would leave a balance in the amount of $1,203,200.00 available for the payment of claims. Administrative claims for Debtor's attorney is $15,000.00. The estimated total amount of secured debt that would be allowed in the Chapter 7 case is $943,493.00 of $943.493.00 in claims. Priority claims total $1,244.00. The total amount of general non-priority unsecured claims that would be allowed in the Chapter 7 case is estimated to be approximately $415,583.00 in claims. This would permit the payment of a dividend to non-priority unsecured creditors of approximately 21.34 cents on the dollar, or 21.34%, or $319,054.00, on total claims of $1,077,696.00 should Naturomulch file a petition under Chapter 7 of the Bankruptcy Code. The amount available after payment of administrative claims, priority secured and unsecured debt would be $319,054.00 on total claims of $1,493.279.00. See attached Exhibit "D".

## IX
## MANAGEMENT

The owner of Naturomulch in control of the business and its revenue is as follows:

Omprakash Goyal owns 100% of the company and eventually hopes to have a with an annual salary of at least $150,000.00.

The person above will constitute the management of Naturomulch during the period of the proposed plan. Their salary will be as shown above, or may increase, during the period of the plan.

## X
## STATUS OF CASE

This Chapter 11 case was filed by Naturomulch because, in its opinion, and in the opinion of its counsel, it was the only feasible method of stopping Western Equipment (now Huntington Bank) from repossessing the Rotochopper which is essential to mulch wood and would have shut down the business. In the opinion of Naturomulch, most of its creditors will receive considerably more in this Chapter 11 case than they would have received had it gone out of business or filed under Chapter 7 of the Bankruptcy Code.

This Chapter 11 case was initially filed on March 31, 2025 to stop repossession of their Rotochopper which is critical to its wood mulching business. Since then, under the protection of the bankruptcy court, Naturomulch has reorganized. This required the time and expertise of the owner, Omprakash Goyal. There is a greater chance that all other creditors of the Debtor will be paid much more in this Chapter 11 than in a Chapter 7, since the Debtor, and not a Chapter 7 Trustee, will be working to operate its business and repay its creditors in an ongoing operation.

## ARTICLE XII
## SUMMARY OF PLAN

The Plan calls for a payment of $12,897.33 per month beginning August 1, 2025 for one hundred and twenty (120) months for a total paid in base of $1,547,679.52. This is a 100% repayment to all creditors over one hundred twenty (120) months.

This Plan of Reorganization provides for the repayment of 100% of its administrative debts and 100% of its unsecured debts by paying the amounts shown above. Attorney's fees of $15,000.00 will be paid from first funds as an administrative claim subject to court approval (Class 1). Priority creditors (Class 2) and secured creditors (Classes 3, 4, 5, 6 and 7) shall be paid 100% in the amount of $979,014.00. The holders of all unsecured claims will receive payments totaling $553,665.52 or 100% of the amount of their allowed claims in the amount of $415,582.00 at 6% for one hundred twenty (120) months (Class 8). These Class 8 unsecured creditors will receive a total of $553,665.52 which includes an additional payment over the next ten (10) years of $233,836 more in this Chapter 11 than they would in a Chapter 7 liquidation where they would only receive a total of $319,055 or 21.34% of their claims. They are much better off in this Chapter 11 Plan than they would be in a Chapter 7 liquidation. See attached Exhibits "D", "D-1" and "E". Funds for the payment of these claims will come from continued operations.

## ARTICLE XIII
## DEFINITIONS

The following terms when used in this Plan shall have the following meanings:

**Administrative claim.** An administrative expense (including a professional fee or expense) that is entitled to priority of payment under 11 U.S.C §507(a)(l) and that is allowed under 11 U.S.C §503.

**Allowed claim.** The amount of a claim, a proof of which was filed within the time fixed by the Court or which was listed on the schedules filed by the Debtor (and was not listed thereon as being disputed, contingent or unliquidated), to which no objection is filed or which is allowed by order of the Court.

**Court.** The United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

**Critical Vendors.** None

**Debtor.** Naturomulch, LLC, a Texas limited liability company, engaged in the brokerage of compaction equipment.

**Effective date of the Plan.** Shall mean a Business Day which is fifteen (15) days after Confirmation Date unless this Confirmation Order is stayed in which case the effective date shall

be the first business day after which the Confirmation Order becomes a Final Order.

**Estate.** The estate created under 11 U.S.C §541 by reason of the commencement of this case.

**Impaired claim.** A claim of which the legal, equitable or contractual rights of the holder are altered by the Plan.

**Plan.** The Debtor's Plan of Reorganization Dated June 30, 2025 and subsequent Modifications or Amendments (i.e., this Plan or Reorganization).

**Term of Plan.** A period beginning on the effective date of the Plan and ending when all payments and other acts required of the Debtor under the Plan have been made.

## ARTICE XIV
## CLASSIFICATION OF CLAIMS

The claims to be dealt with under the Plan are classified as follows:

| | |
|---|---|
| Class 1 | Administrative claim of attorney's fees (not impaired) |
| Class 2 | Priority tax claims - (not impaired) |
| Class 3 | Secured property tax claims - (not impaired) |
| Class 4 | Unsecured equipment creditors (impaired) |
| Class 5 | Fully secured equipment creditors (not impaired) |
| Class 6 | Oversecured real estate creditors (not impaired) |
| Class 7 | Oversecured real estate creditors with SBA guarantees (impaired) |
| Class 8 | Unsecured creditors ( impaired) |
| Class 9 | Equity security holders (not impaired) |

## ARTICLE XV
## CLASSES OF CLAIMS NOT IMPAIRED BY THE PLAN

The following classes of claims are not impaired by the Plan:  Class 1, 2, 3, 5, 6, and 9.

## ARTICLE XVI
## TREATMENT OF UNIMPAIRED CLAIMS

In Class 1, the Debtor's attorney ($15,000.00) shall be paid from first funds its claim of $15,000.00 as an administrative expense subject to Court approval.

Classes 2, 3, 5, and 6 shall be paid at the contract rate.

## ARTICLE XVII
## TREATMENT OF IMPAIRED CLAIMS

Class 4, 7 and 8 are impaired.

Class 4, 7 and 8 will be paid from continued operations after payments of all administrative claims.

## ARTICLE XVIII
## TREATMENT OF ADMINISTRATIVE, PRIORITY AND SECURED TAX CLAIMS

All allowable claims for costs and expenses of administration entitled to priority under 11 U.S.C. §507(a)91), estimated to be $15,000.00 including fees and expenses of professionals, shall be paid in full upon the approval of such claims by the Court.

All priority and secured tax claims shall be paid in full as explained below in Article XIX as part of the mortgage payments or directly under the Plan as follows:

| | |
|---|---|
| Texas Comptroller (sales tax) | $1,244.95 |
| City of Highland Village | $3,501.61 |
| Denton County | $1,384.98 |
| Dallas County | $5,129.79 |
| Ellis County | $3,659.60 |

## ARTICLE XIX
## TREATMENT OF INTERESTS

### Class 1.  Administrative Claims (not impaired)

Debtor's attorney Durand & Associates shall be paid $15,000 subject to the approval of the court.

### Class 2.  Priority Claims (not impaired)

Texas Comptroller shall be paid $1,244.99 for Sales Tax due directly from the Debtor at the statutory rate.  Debtor irregularly paying its sales taxes when they are due every quarter.

**Class 3.  Tax Claims Secured By Property (not impaired)**

The following property tax claims shall be paid by the Debtor through regular mortgage payments:

| | |
|---|---|
| City of Highland Village | $3,501.61 – Included with the Escrow with Shellpoint Mortgage |
| Dallas County | $5,129.79 – Debtor has already paid its taxes for 2024.  Any outstanding taxes are due in January 2026 for the year 2025 that will be paid when they are due. |
| Denton County | $1,314.98 – Included in the Escrow with Shellpoint Mortgage |
| Ellis County | $3,659.60 – Debtor has already paid its taxes for 2024.  Any outstanding taxes are due in January 2026 for the year 2025 that will be paid when they are due. |

**Class 4.  Undersecured Equipment Creditors (impaired)**

US Bank has a claim for $423,716.07 and shall be paid the value of its collateral $201,709 for a RotoChipper at 6% interest for 60 months with monthly payments of $3,899.60 for a total of $233,976.  Its remaining claim of $222,007 shall be paid as a Class 8 unsecured creditor.

Huntington Bank has a claim for $95,706 and shall be paid the value of its collateral $38,953 at 6% interest for 60 months with monthly payments of $753.08 for a total of $45,184.80.  Its remaining claim of $56,753 shall be paid as a Class 8 unsecured creditor.

US Small Business Administration has a claim for $177,046.23 for a Covid loan and shall be paid the value of its collateral $71,102 at 6% interest for 60 months with monthly payments of $1,407.95 for a total of $84,477.20.  Its remaining claim of $105,944.23 shall be paid as a Class 8 unsecured creditor.  The Debtor reserves the right to dispute and file an objection to this claim as it was a Covid disaster relief loan that was charged off.  If the Debtor has to pay them then it must request$71,102.00 at 3.75%, that was their original interest rate and spread it over 30 years per their agreement.  It does not want to pay them over 60 months.

**Class 5.  Fully Secured Equipment Creditors (not impaired)**

Kabota Credit Corporation has a claim for $15,481 and shall be paid the value of its collateral $15,481 for an Excavator  with monthly payments at the contract rate.

Kabota Credit Corporation has another claim for $39,830 for a Skid Steer and shall be paid the value of its collateral $39,830  with monthly payments at the contract rate.

GM Financial has a claim of $28,938 for a 2021 Chevy Silverado valued at $28,938 and

shall be paid at its contract rate.

### Class 6.  Oversecured Real Estate Creditors (not impaired)

Brdecka Holdings, LLC has a claim for $46,669 secured by real estate valued at $240,000 shall be paid at its contract rate of $709.77 per month for 66 months for a total of $46,669.

Shellpoint Mortgage has a claim for $375,733 secured by real estate valued at $630,000 shall be paid at its contract rate of $4,500 per month for 120 months for a total of $270,000 and will continue payments thereafter until paid in full.

### Class 7.  Oversecured Real Estate Creditor With SBA Guaranty  (impaired)

Texas First Bank's claim or $154,016 secured by real estate valued at $154,016 and has an SBA guaranty backing shall be paid at 7% fixed rate (changed from a variable rate) at $1,801.70 per month until paid in full in 120 months for a total of $214,459.39.  This debt has to be restructured to improve the Debtor's cash flow for survival and benefit to the entire estate.

### Class 8.  Unsecured Creditors (impaired)

The five (5) unsecured creditors shown on attached Exhibit "E"  whose claims total $415,852 shall be paid 100% of their claims at  6% interest on their claims for 120 months for a total of $553,665.52 and distribution shall be made pro rata according to the distribution table attached as Exhibit "E".

### Class 9.  Equity Security Holders (not impaired)

Omprakash Goyal has a 100% membership interest and interest and shall maintain his respective equity position in the reorganized debtor.

### ARTICLE XX
### IMPLEMENTATION OF THE PLAN

The Debtor shall retain all of its property and shall operate its business during the period of the Plan.  The funds for implementing and carrying out the Plan shall be provided by the Debtor's business operations.

### ARTICE XXI
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts or unexpired leases of the Debtor not previously assumed or rejected under 11 U.S.C. §365 are hereby expressly rejected.

## ARTICE XXII
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction over the parties to and the subject matter of the Plan and all matters related thereto until the Plan has been fully consummated and the case closed, or until the case is dismissed or converted to another chapter. Specifically, the court shall retain jurisdiction to interpret and enforce the provisions of the Plan, determine all disputes or controversies arising under the Plan, enter orders in aid of consummation of the plan, and determine the allowance of claims or expenses against the Debtor or the Estate.

## ARTICLE XXIII
## DISCHARGE AND RELEASE

Upon completion of the Plan payments, the Debtor, Naturomulch, LLC, and all property of the Estate shall be discharged and released from liability for any and all claims, debts, liabilities and encumbrances that arose before the date of the order confirming the Plan, except as otherwise expressly provided in the Plan, or by law.

## ARTICE XXIV
## DEFAULT PROVISION

If the Debtor or the reorganized Debtor fails to make all payments on federal taxes or other debts as provided for in this Plan or if any other event of default as provided in the Plan occurs, the United States and the creditors, shall be entitled to give the Debtor notice of the default and if the default has not been cured within ten (10) days from the mailing of the written notice, the United States and the creditors, shall have the following rights:

(a)   The United States and other creditors shall have the right to declare due and payable any interest or penalties which would have accrued on prepetition tax liabilities for the Debtor but for the filing of the bankruptcy petition and if the Debtor fails to pay the interest and penalties then they may be assessed by the United States;

(b)   The prepetition tax claims, and other debts, shall be treated as taxes or debts owed by a nondebtor as if no bankruptcy petition has been filed and as if no plan had been confirmed;

(c)   The United States and other creditors, shall have the right to proceed to collect from the Debtor or the reorganized Debtor any of the prepetition tax or other liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code or law as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(d)   The ad valorem tax liens of Denton, Dallas and Ellis Counties for all tax years will remain in full force and effect until the taxes, as well as any penalty or interest thereon, have been paid in full. Furthermore, Denton County shall receive interest from the Petition Date through the

Effective Date under U.S.C. §506(b), as well as from the Effective Date until paid in full under §1 129(b), both at the statutory rate of 1% per month, as required by U.S.C.§511.

As to any property being marketed for sale, payments will be suspended for one year from the Effective Date, and upon that one year anniversary of the Effective Date, payments shall begin in equal monthly payments in cash over a period ending not later than five years after the Petition Date.

The taxes for the 2025 tax year, and all years following, shall be timely paid. If the 2025 taxes or any following year of taxes are not timely paid, or if appropriate payments on pre-petition taxes have not begun subsequent to the one year anniversary of the Effective Date, the Debtor shall have defaulted on this Plan, and Denton, Dallas and Ellis Counties will be at liberty to pursue state court collection of all taxes due on the subject property without further recourse to the Bankruptcy Court.

## ARTICE XXV
## MISCELLANEOUS PROVISIONS

**Management.** The Debtor's business and property shall be managed during the period of the Plan by the Debtor's present management.

**Property of Estate.** All property of the Estate not dealt with in the Plan shall be deemed the property of the Debtor upon the effective date of the Plan.

**Ratification.** All loan documents of any secured creditors are ratified and remain in force and effect subject to the Plan and Confirmation Order. All liens and security interests of any banks remain in full force and effect.

**Modification of Plan.** The Debtor may file and submit modifications of the Plan to the Court at any time prior to confirmation in the manner provided in 11 U.S.C. §1127.

**Default.** If any payment provided for under the Plan is not made on or before the date specified in the Plan, the Debtor shall have ten (10) days in which to make the payment before being deemed in default. Upon default, creditors shall have the right to pursue their legal and equitable remedies in State Court without further recourse to the Bankruptcy Court.

Dated and respectfully submitted this ___30th___ day of June, 2025.

BY: _____

Daniel C. Durand III
Durand & Associates, P.C.
522 Edmonds, Suite 101
Lewisville, TX 75067
Phone: (972) 221-5655
Fax: (972) 221-9569
Texas Bar Card No. 06287570
durand@durandlaw.com
Attorney for Debtor

BY: _____

Omprakash Goyal
President
Naturomulch, LLC

---

# Naturomulch, LLC Restructuring Plan

## Case No. 25-40909

Naturomulch, LLC has previously diagnosed the reasons for the financial hardship that are listed below:

1. Loss of large contracts such as City of Dallas and few other regular customers because they have been sold out.  The overall business has reduced for the last couple of years causing less cash flow.

2. Business Insurance such as Commercial Auto, Commercial General Liability, Equipment Inland Marine, and Business Commercial Property have increased almost 3-4 times since last couple of years.

3. Property taxes have increased.

Considering the issues stated above Naturomulch, LLC has come up with the following restructuring plan:

1. Fortunately, we were fortunate to get rewarded with the City of Dallas bid once again for the next three years and with one or two annual renewals. This is going to increase the cash flow significantly.  We should start getting purchase orders hopefully in the months of April or May 2025. From the date we receive a Purchase Order, it takes 3-4 weeks to complete the project then only we can invoice and it takes 30-45 days to get paid after we invoice.

2. The second piece of good news is that we also have been awarded a City of Fort Worth bid for the first time this year.  This is another good cash flow.  We already have received a purchase order to deliver the material at the end of this month.

3. We are making every effort to earn more business from small customers like Daycares, Montessori, Schools, ISD, Churches, Apartment Complexes, HOA, and individuals.

The estimated timeline to improve the cash flow might take another 4-5 months.  In the meantime, we are trying to cut our expenses whatsoever we can save as much as possible cash in hand. At the end of the day, we are positive that we can survive with the current plan. Should we require to make more changes in the future we are open to make changes as needed.

Omprakash Goyal
CEO

**EXHIBIT "A"**

**NATUROMULCH, LLC**
**BALANCE SHEET SUMMARY**
**MARCH 31, 2025**

| ASSETS | TOTAL |
|---|---|
|  |  |
| **Current Assets:** |  |
| Bank Accounts | $     14,687.00 |
| Other Current Assets | 0.00 |
| Total Current Assets | $     14,687.00 |
| Total Long Term Assets: | $1,140,492.00 |
|  |  |
| REAL ESTATE: |  |
| 943 Heatherglen Court, Highland Village, TX | $   650,000.00 |
| 604 Davis Street, Grand Prairie, TX | $   250,492.00 |
| 520 Hunsucker Road, Ferris, TX | $   240,000.00 |
| TOTAL REAL ESTATE ASSETS: | $1,140,492.00 |
|  |  |
| LIABILITIES | TOTAL |
| Credit cards | $     30,879.00 |
| Other Current Liabilities | $   384,704.00 |
| Total Current Liabilities: | $   415,583.00 |
| Long Term Liabilities | $   576,418.00 |
|  |  |
| Total Long Term Liabilities |  |
| Shellpoint Mortgage | $   375,733.00 |
| Texas First Bank | $   154,016.00 |
| Brdecka Holdings, LLC | $     46,669.00 |
| TOTAL LONG TERM LIABILITIES: | $   576,418.00 |
|  |  |
| EQUITY | $   163,178.00 |
|  |  |
| TOTAL LIABILITIES AND EQUITY: | $1,155,179.00 |

**EXHIBIT "B"**

**NATUROMULCH, LLC**
**PROFIT AND LOSS**
**JANUARY – DECEMBER 2024**

| INCOME | TOTAL |
|---|---|
|  |  |
| SALES | $682,637.70 |
| Uncategorized Income | $  14,467.44 |
| TOTAL INCOME: | $697,105.14 |
|  |  |
| COST OF GOODS SOLD | $149,427.61 |
| Freight In – COGS | $    3,600.00 |
| Supplies & Materials – COGS | $    7,774.01 |
| TOTAL COST OF GOODS SOLD: | $160,801.62 |
|  |  |
| GROSS PROFIT: | $536,303.52 |
|  |  |
| EXPENSES |  |
| Advertising & Marketing | $       627.98 |
| Business Licenses | $    8,660.49 |
| Cleaning | $       557.36 |
| Commissions & fees | $    4,360.10 |
| Contract labor | $125,294.12 |
| Credit Card Charges | $  24,066.58 |
| Delivery & Freight | $    5,618.90 |
|  |  |
| GENERAL BUSINESS EXPENSES |  |
| Bank fees & service charges | $       515.85 |
| Memberships & subscriptions | $       989.26 |
| TOTAL GENERAL BUSINESS EXPENSES: |  |
|  |  |
| Insurance | $  17,720.38 |
| Interest paid | $  23,701.14 |
| Legal & accounting services | $       149.70 |
| Accounting fees | $    2,755.50 |
| Legal fees | $       149.70 |
| TOTAL LEGAL & ACCOUNTING SERVICES: | $    3,054.90 |
|  |  |
| Loan fees | $    6,310.17 |
| Meals | $    2,967.28 |
| Office expenses | $         75.78 |
| Merchant account fees | $    1,564.85 |

Page **1** of **3**

EXHIBIT "C"

| | |
|---|---|
| Office supplies | $ 1,404.27 |
| Printing & photocopies | $ 29.99 |
| Shipping & postage | $ 5.58 |
| Software & apps | $ 1,856.38 |
| TOTAL OFFICE EXPENSES: | $ 4,936.85 |
| | |
| PAYROLL EXPENSES | |
| Officer's salaries | $ 5,000.00 |
| Salaries & wages | $ 67,190.17 |
| Taxes | $ 843.75 |
| Wages | $ 7,000.00 |
| TOTAL PAYROL EXPENSES: | $ 80,033.92 |
| | |
| RENT | |
| Equipment rental | $ 5,747.78 |
| TOTAL RENT: | $ 5,747.78 |
| | |
| SUPPLIES & MATERIALS | |
| Repairs & maintenance | $ 13,253.32 |
| Security | $ 871.74 |
| Supplies | $ 9,928.43 |
| Supplies & materials | $ 1,136.20 |
| TOTAL SUPPLIES & MATERIALS: | $ 11,064.63 |
| | |
| TAXES | |
| Taxes paid | $ 9,199.68 |
| Payroll taxes | $ 7,543.92 |
| Property taxes | $ 5,978.25 |
| TOTAL TAXES PAID: | $ 22,721.85 |
| | |
| TRAVEL | |
| Hotels | $ 577.30 |
| Vehicle rental | $ 927.18 |
| TOTAL TRAVEL: | $ 1,504.48 |
| | |
| UNCATEGORIZED EXPENSES | |
| Uncategorized Expenses | $ 1,028.33 |
| Utilities | $ 4,482.89 |
| Disposal & waste fees | $ 4,988.12 |
| Electricity | $ 3,383.38 |
| Internet & TV services | $ 2,724.51 |
| Phone service | $ 7,346.46 |
| Water & sewer | $ 862.73 |

Page **2** of **3**

EXHIBIT "C"

| | |
|---|---|
| TOTAL UTILITIES: | $  23,788.09 |
| TOTAL EXPENSES: | $389,395.50 |
| | |
| NET OPERATING INCOME | $146,908.02 |
| OTHER INCOME | |
| Credit card rewards | $        149.07 |
| | |
| OTHER EXPENSES | |
| Reconciliation discrepancies | $  18,274.82 |
| | |
| VEHICLE EXPENSES | |
| Parking & tolls | $      3,407.78 |
| Vehicle gas & fuel | $      8,943.55 |
| Vehicle insurance | $  28,899.49 |
| Vehicle registration | $          40.00 |
| Vehicle repairs | $  21,461.64 |
| Vehicle wash& road services | $          91.33 |
| TOTAL VEHICLE EXPENSES: | $  62,843.79 |
| | |
| TOTAL OTHER EXPENSES | $  81,118.61 |
| NET OTHER INCOME | $ -80,969.54 |
| NET INCOME: | $  65,938.48 |
| | |

Page **3** of **3**

EXHIBIT "C"

# CHAPTER 7
## LIQUIDATION ANALYSIS
### NATUROMULCH, LLC

| | |
|---|---|
| Sale of All Assets: | $ 1,522,254.00 |
| | |
| Expenses of Administration | |
|   Trustee (10%) | $  - 152,225.00 |
|   Realtor commission (6%) | $  -  68,429.00 |
|   Closing costs (2%) | $  -  22,809.00 |
|   Attorney | $  -  15,000.00 |
| | |
| Priority Debt | $  -   1,244.00 |
| Secured Debt | $  - 943,493.00 |
| | |
| Unsecured creditor pool | $    319,054.00 |
| | |
| Unsecured Debt | $    415,583.00 |
| Lawsuit claims | $+1,077.696.00 |
| Total Unsecured Claims | $  1,493,279.00 |
| | |
| Dividend to Unsecured Creditors | |
|   $319,054.00 | |
| 1,493.279.00 = 21.34% | |

**EXHIBIT "D"**

## CHAPTER 7
## DISTRIBUTION TO CLASS 8 UNSECURED CREDITORS

| CREDITOR | CLAIM | CLASS PERCENTAGE | TOTAL PRO RATA PAYMENT |
|---|---|---|---|
| | | | |
| American Express | $    8,473.00 | .57 | $    1,820.00 |
| Bank of America | $   22,405.00 | 1.50 | $    4,787.00 |
| Huntington Bank | $   56,753.00 | 3.80 | $  12,128.00 |
| SBA | $  222,007.00 | 14.87 | $  47,447.00 |
| US Bank | $  105,944.00 | 7.09 | $  22,628.00 |
| City of Dallas | $  785,196.00 | 52.56 | $167,745.00 |
| City of Fort Worth | $  292,500.00 | 19.58 | $  62,490.00 |
| | | | |
| TOTAL: | $1,493,349.00 | 99.97 | $319,055.00 |
| | | | |
| Payments - $   319.055.00 = 21.34% claims paid Claims     - $1,493,349.00 | | | |

**EXHIBIT "D-1"**

**CHAPTER 11**
**DISTRIBUTION TO UNSECURED CREDITORS CLASS 8**
**NATUROMULCH, LLC**

| CREDITOR | CLAIM | CLASS PERCENTAGE | TOTAL PRO RATA PAYMENTS | 120 MONTHLY PAYMENTS |
|---|---|---|---|---|
| | | | | |
| American Express | $ 8,473.00 | 2.04 | $ 11,294.78 | $  94.12 |
| Bank of America | $ 22,405.00 | 5.39 | $ 29,842.57 | $ 248.69 |
| Huntington Bank | $ 56,753.00 | 13.66 | $ 75,630.71 | $ 630.26 |
| SBA | $222,007.00 | 53.39 | $295,602.02 | $2,463.35 |
| US Bank | $105,944.00 | 25.48 | $141,073.97 | $1,175.62 |
| TOTAL | $415,853.00 | 100 | $55,665.52 | $4,612.04 |

**EXHIBIT "E"**

2035 Projections

**Projected Monthly Income and Loss Statement for Ten years**

| Amount Distribution - 2035 | Jan-35 | Feb-35 | Mar-35 | Apr-35 | May-35 | Jun-35 | Jul-35 | Aug-35 | Sep-35 | Oct-35 | Nov-35 | Dec-35 | Annual Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gross Sales - Monthly | 45,000.00 | 43,000.00 | 80,000.00 | 85,000.00 | 90,000.00 | 96,000.00 | 95,000.00 | 98,000.00 | 85,000.00 | 78,000.00 | 60,000.00 | 55,000.00 | 910,000.00 |
| Cost of Goods Sold: | 6,500.00 | 7,200.00 | 13,000.00 | 15,000.00 | 17,000.00 | 18,000.00 | 18,000.00 | 21,000.00 | 15,000.00 | 12,000.00 | 8,000.00 | 7,500.00 | 158,200.00 |
| Gross Profit/Loss | 38,500.00 | 35,800.00 | 67,000.00 | 70,000.00 | 73,000.00 | 78,000.00 | 77,000.00 | 77,000.00 | 70,000.00 | 66,000.00 | 52,000.00 | 47,500.00 | 751,800.00 |
| Business Expenses Details - 2035 | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly | Amount Monthly |
| Utilities: | 866.67 | 866.67 | 866.67 | 866.67 | 866.67 | 866.67 | 866.67 | 866.67 | 866.67 | 866.67 | 866.67 | 866.67 | 10,400.04 |
| Telephone & Internet: | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 6,600.00 |
| Electricity: | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 6,600.00 |
| Gas | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Security Services: | 154.17 | 154.17 | 154.17 | 154.17 | 154.17 | 154.17 | 154.17 | 154.17 | 154.17 | 154.17 | 154.17 | 154.17 | 1,850.04 |
| Yardcare | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800.00 |
| Fuel: Diesel & Gasoline | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| Toll Expenses | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 |
| Vehicle and Tire Repairs: | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| Vehicle Registration & Inspection | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 5,000.04 |
| Office supplies, printing, postage, etc. | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 5,000.04 |
| Advertising Expenses: | 166.67 | 166.67 | 166.67 | 166.67 | 166.67 | 166.67 | 166.67 | 166.67 | 166.67 | 166.67 | 166.67 | 166.67 | 2,000.04 |
| Bank fees & service charges | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 41.67 | 500.04 |
| Memberships & subscriptions | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 999.96 |
| IPEMA Certification | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 1,500.00 |
| TUV SUD Sample Testing | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 |
| Minority Certificates | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 83.33 | 999.96 |
| Bookkeeping Fees | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800.00 |
| Legal Fees: | 1,250.00 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 416.67 | 5,833.37 |
| Payroll Taxes | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 9,000.00 |
| Salaries and Wages | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 60,000.00 |
| Insurance Expenses: | 8,008.67 | 8,041.67 | 8,475.00 | 8,774.99 | 9,150.00 | 9,150.00 | 9,150.00 | 9,150.00 | 9,150.00 | 9,150.00 | 9,150.00 | 9,150.00 | 106,500.33 |
| Credit Card Processing Fees | 758.33 | 833.33 | 833.33 | 833.33 | 833.33 | 833.33 | 833.33 | 833.33 | 833.33 | 833.33 | 833.33 | 833.33 | 9,924.96 |
| Property Taxes: | 2,054.82 | 2,208.33 | 2,358.33 | 2,456.33 | 2,566.66 | 2,566.66 | 2,566.66 | 2,566.66 | 2,566.66 | 2,566.66 | 2,566.66 | 2,566.66 | 29,611.09 |
| Interest Paid: | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 2,083.33 | 24,999.96 |
| Miscellaneous Expenses: | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 2,304.17 | 27,650.04 |
| Contract Labor: | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 150,000.00 |
| | 45,263.50 | 44,691.68 | 45,275.01 | 45,673.00 | 46,158.34 | 46,158.34 | 46,158.34 | 46,158.34 | 46,158.34 | 46,158.34 | 46,158.34 | 46,158.34 | 550,169.91 |

| Annual Net Income/Loss | 201,630.09 | |
|---|---|---|
| **Real Estate Mortgage Expenses: Monthly** | | |
| Texas First Bank | 1,788.26 | For 10 years @ 7% interest rate |
| Brdecka Holdings, LLC | 709.77 | For remaining 66 months @ 6% interest rate |
| Shellpoint Mortgage Servicing | 4,330.00 | Paying as agreed originally |
| **Equipment Finance Expenses:** | | |
| Kubota Credit Corporation | 2,318.09 | Paying as agreed originally for remaining 20 months +/- |
| U.S. Bank Equipment Finance | 3,899.60 | For 5 years @ 6% interest rate |
| Huntington Finance | 753.08 | For 5 years @ 6% interest rate |
| GM Financial | 983.77 | Paying as agreed originally for remaining 36 months +/- |
| **Unsecured Loan:** | | |
| American Express | | |
| Bank of America | | |
| SBA Economic Injury Disaster Loan - Covid | | We are going to dispute this |