**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-40909 |
| | § | |
| NATUROMULCH, LLC, | § | CHAPTER 11 |
| | § | [Subchapter V] |
| Debtor. | § | |
| | § | HEARING DATE: August 5, 2025 |
| | § | HEARING TIME: 9:30 a.m. |

**NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AS SERVICER FOR PACIFIC ASSET HOLDING LLC, A DELAWARE LIMITED LIABILITY COMPANY; A WHOLLY-OWNED SUBSIDIARY OF PACIFIC LIFE INSURANCE COMPANY'S OBJECTION TO CONFIRMATION OF CHAPTER 11 PLAN**

**TO:  THE HONORABLE BRENDA T. RHOADES,
  CHIEF UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") as servicer for Pacific Asset Holding LLC, a Delaware limited liability company; a wholly-owned subsidiary of Pacific Life Insurance Company ("Creditor") hereby files the following *Objection to Confirmation of Chapter 11 Plan* [Dkt. No. 27] ("Objection"), and in support thereof, states:

**I. STATEMENT OF FACTS**

1. **LOAN HISTORY**

    1. On May 6, 2022, Naturomulch, LLC (the "Debtor") executed a Promissory Note (the "Note") in the principal sum of $388,500.00 (the "Note"). The Note reflects it was indorsed in blank. (*See* Exhibit 1).

2. The Note is secured by a Mortgage (the "Mortgage")[1] granting a security interest in the real property located at 943 Heatherglen Court, Highland Village, TX 75077 (the "Property"), which is more fully described in the Mortgage. The Mortgage reflects that it was duly recorded. (*See* Exhibit 2).

3. Subsequently, interest in the Subject Loan was assigned to Creditor. (*See* Exhibit 3).

B. **THE BANKRUPTCY CASE**

4. On March 31, 2025, Debtor filed the instant voluntary petition under Chapter 11 of the Bankruptcy Code in the Eastern District of Texas and was assigned bankruptcy case number 25-40909 (the "Bankruptcy Case"). (*See* Dkt. No. 1).

5. Pursuant to Debtor's Bankruptcy Schedules, the Property is the Residence of the Debtor's principal. The Debtor valued the Property at $630,000.00, and listed Shellpoint's Claim as undisputed in the amount of $375,733.92. (*See* Dkt. No. 1).

6. On June 30, 2025, Debtor filed a *Chapter 11 Plan* ("Plan"). (Dkt. No. 27). The Debtor listed Creditor's Claim in Class 6 as "**not impaired**" for "Oversecured Real Estate Creditors." Pursuant to the Plan, "Shellpoint Mortgage has a claim for $375,733 secured by real estate valued at $630,000 shall be paid at its contract rate of $4,500 per month for 120 months for a total of $270,000 and will continue payments thereafter until paid in full." (*See* Claim Class 6).

7. As of August 1, 2025, the approximate payoff amount owed the claim totals **$408,097.89**. (*See* Exhibit 4). The monthly post-petition payments total $3,255.73, and include an escrow impound of $957.61, and are subject to change.

---

1 The Note and Mortgage are collectively referred to as the "Loan."

## II. ARGUMENT

### A. THE CLAIM IS IMPAIRED IN THE PLAN

8. Generally, a claim is impaired unless it "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest…." or "…notwithstanding any contractual provision or applicable law that entitles a creditor to demand or receive accelerated payments of such claim or interest after the default…(A) cures any such default that occurred *before or after* commencement of the case, (B) reinstates the maturity of such claim or interest as existed before such default, (C) compensates the creditor for any damages incurred as a result of any reasonable reliance on such contractual provisions or applicable law; (D) compensates the creditor for any non-monetary default, other than failure to operate a nonresidential real property lease; and (E) *does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the creditor*. See 11 U.S.C. §1124(a), (b) (emphasis added). Indeed, generally, <u>any alteration</u> of rights constitutes impairment, even if the value of the rights is enhanced. *See In re Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305 (7th Cir. 1995).

9. Chapter 11 of the Bankruptcy Code provides that a plan of reorganization must, among other things, "provide adequate means for the plan's implementation," including the "curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). If a debtor is seeking to "cure" a default under 11 U.S.C. § 1124, then the debtor must generally cure said default by the effective date of the Plan or within a reasonable time and in accordance with the contractual documents, which would include interest on said arrears in accordance with the Note. *See* 11 U.S.C. §1123(d); *In re Tri-Growth Centre City, Ltd.*, 136 B.R. 848, 852 (Bankr. S.D. Cal. 1992); *In re Lennington*, 288 B.R. 802, 804-06 (Bankr. C.D. Ill. 2003).

10. As discussed above, "In general, a class of claims is impaired under section 1124 if the plan alters the legal, equitable or contractual rights to which the holders of such claims are otherwise entitled, unless the only alteration is the reinstatement of the original maturity and curing defaults with respect to an accelerated debt." 7 *Collier on Bankruptcy* ¶ 1124.02 (Richard Levin & Henry J. Sommer eds., 16th ed.). For example, changing the contractual interest rate,[2] making deferred payments on terms different from the original contract,[3] or stretching payment beyond the maturity of its original contract,[4] all constitute impairment of the claim. *See In re S-Tek 1 LLC, 2021 WL 5858906, at \*3 (Bankr. D.N.M. Dec. 9, 2021)*. A claim can also be impaired by changing noneconomic contract terms. *Id.*

11. Thus, to be unimpaired by a plan, the debtor's plan must either "leave[ ] unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest," § 1124(1), or satisfy a set of criteria to cure any default, reinstate the claim's maturity date, compensate the creditor for any damages, and not otherwise "alter the legal equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest." § 1124(2); *see also* 7 *Collier on Bankruptcy* ¶ 1124.01 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Under section 1124(2), in general, the plan can leave a class of claims or interests unimpaired by curing defaults, reinstating the maturity of the claims or interests, compensating the holders for any damages, and not otherwise impairing the rights of the holders.").

---

2 *In re Valencia Flour Mill, Ltd.*, 348 B.R. 573, 577 (Bankr. D.N.M. 2006) (creditor whose claim under debtor's proposed plan would be paid at an interest rate other than the contract rate was impaired).
3 *In re G.L. Bryan Invs., Inc.*, 340 B.R. 386, 390 (Bankr. D. Colo. 2006) (citing *In re Grandfather Mountain Ltd.*, 207 B.R. 475, 485 (Bankr. M.D.N.C. 1996)).
4 7 *Collier on Bankruptcy* ¶ 1124.03 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[A] delay in payment of a claim beyond its contractual maturity date results in impairment.") (citing *G.L. Bryan*, 340 B.R. at 391).

12. The burden is on the individual Chapter 11 debtor, as plan proponent, to demonstrate that a proposed plan leaves a creditor's rights unaltered. 11 U.S.C. § 1124; *see also In re Reuter*, 427 B.R. 727, 773 (Bankr. W.D. Mo. 2010).

13. Here, the Plan expressly states that the Class 6 claimants are "**not impaired**." However, the Plan proposes to change the payment amounts, payment schedule, and possibly the loan term. Specifically, the Plan states: "Shellpoint Mortgage has a claim for $375,733 secured by real estate valued at $630,000 shall be paid at its contract rate of $4,500 per month for 120 months for a total of $270,000 and will continue payments thereafter until paid in full." (*See* Claim Class 6).

14. The Plan treatment is unclear. It is unclear how the Debtor arrived at the proposed payment of $4,500 per month. Assuming, the Debtor proposes to pay the Claim at the current contract rate of (5.875%), the resulting principal and interest payments on a Claim of $375,733 over 120 months would be $4,147.86 per month (excluding escrow). Further, the amount of the Claim listed in the Plan is understated. As discussed above, the as of August 1, 2025, the approximate payoff amount owed the claim totals $408,097.89.

15. Based on the foregoing, its appears the Debtor is attempting to change the claim amount, payment amounts, payment term, and payment schedule. As a result, the Claim is impaired under the Plan, and confirmation should be denied.

B.  **THE PLAN VIOLATES §506(a)**

16. In the Plan, Debtor described the Claim as "oversecured," and stated Shellpoint Mortgage has a claim for $375,733 secured by real estate valued at $630,000. Based on the foregoing, the Claim is oversecured and must be paid in full under the Plan. 11 U.S.C. 506(a). As

of August 1, 2025, the approximate payoff amount owed the claim totals $408,097.89. However, the Plan fails to provide for Creditor's fully secured claim (contemplating a Claim of only $375,733). As a result, the Plan violates §506(a), and confirmation of the Plan must be denied.

## C.   THE PLAN FAILS TO PROVIDE FOR THE CURE OF THE CONTRACTUAL ARREARS

17.   Bankruptcy courts that have addressed cure amounts under 11 U.S.C. § 1124(2)(A) appear to be virtually uniform in their opinion that the cure "must occur, in full, prior to or on the effective date of the plan in order to restore of the parties to their pre-default state. The effect of § 1124(2) is to treat the claim as if default had not occurred, but this can only be accomplished if 'cure' occurs in full and immediately." *In re Schatz*, 426 B.R. 24, 27 (Bankr.D.N.H.2009). *See also Tri–Growth Centre City, Ltd.*, 136 B.R. 848, 852 (Bankr.S.D.Cal.1992); *In re Jones*, 32 B.R. 951 (Bankr.D.Utah 1983); *In re Cottonwood Corners Phase V, LLC*, 2012 WL 566426, at *13 (Bankr. D.N.M. 2012); *In re Jacobs*, 2024 WL 1154093, at *11 (D.N.M. Mar. 18, 2024) (holding cure of arrears beyond plan term constituted impairment under §1124 and therefore violated §1123(b)(5)).

18.   Section 1123(d) provides that, if a plan proposes to cure a default, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). The meaning of this provision is plain, and most courts have applied § 1123(d) as written, looking to the underlying loan agreement and state law to determine whether a debtor must pay interest at the default rate to cure and reinstate its agreement under a chapter 11 plan. *See*, e.g., *New Invs.*, 840 F.3d at 1140-42; *In re Sagamore*

*Partners, Ltd.*, 620 F. App'x 864 (11th Cir. 2015); *Depietto*, 2021 WL 3287416 at *6-7; *Moshe*, 567 B.R. at 444-46; *Moody*, 426 B.R. at 674.

19. To cure and reinstate its loan under a plan of reorganization, the Debtor must pay default interest and fees to the extent required by its loan agreement and New York law. *In re Golden Seahorse LLC*, 652 B.R. 593, 616 (Bankr. S.D.N.Y. 2023). (emphasis added).

20. As discussed above, Creditor's Claim is oversecured and must be paid in full. The Plan lists Creditor's Claim as unimpaired. Accordingly, the contractual arrears, including post-petition interest and fees must be cured upon the Effective Date of the Plan, or within a reasonable period thereafter. However, the Plan fails to provide for the cure of the contractual arrears. Creditor has not agreed to waive any defaults or amounts owed under the loan documents. Based on the foregoing, confirmation of the Plan must be denied.

### Prayer

**WHEREFORE, PREMISES CONSIDERED**, Creditor respectfully requests that the Court enter an order denying confirmation of the Plan, and for such further relief as the Court may deem just and proper.

Respectfully Submitted,

*/s/ Jennifer Laufgas*
Jennifer Laufgas, BN 56181
**ATTORNEY FOR CREDITOR**
**ALDRIDGE PITE, LLP**
101 East Park Blvd, Suite 600
Plano, TX 75074
Telephone: (713) 293-3610
Facsimile: (858) 412-2792
Email: jlaufgas@aldridgepite.com
***Mailing Address***
3333 Camino del Rio South, Suite 225
San Diego, CA 92108

## **CERTIFICATE OF SERVICE**

      I hereby certify I caused a copy of the foregoing *Objection* to be served upon the following parties via electronic means through the Court's CM/ECF system or by pre-paid regular first class U.S. Mail on August 1, 2025.

      By: **Jennifer Laufgas**
      Jennifer Laufgas

**DEBTOR'S ATTORNEY**
**(via electronic notice)**
**Daniel C Durand, III**
Durand & Associates, P.C.
522 Edmonds, Ste. 101
Lewisville, TX 75067
Email: bankruptcy@durandlaw.com

**DEBTOR**
**Naturomulch, LLC**
PO Box 1902
Coppell, TX 75019

**TRUSTEE**

**Scott SEIDEL (SBRA V)**
Sub V Chapter Trustee
6505 West Park Boulevard
Ste. 306
Plano, TX 75093
Email: scott@scottseidel.com

**U. S. TRUSTEE**
**(via electronic notice)**
**John M. Vardeman**
UST Office
110 N. College St., Suite 300
Tyler, TX 75702
Email: john.m.vardeman@usdoj.gov